LUCIUS N. LITTAUER, WILLIAM LITTAUER, AND MANUFACTURERS TRUST COMPANY, OF NEW YORK, N. Y., AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF EUGENE LITTAUER, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51858. Promulgated November 27, 1931.

984

*Fred Linus Carroll, Esq.*, for the petitioners.
*John E. Marshall, Esq.*, for the respondent.

986

TRAMMELL: In the pleadings the petitioners set forth nine assignments of error, upon the basis of which it is asserted that the respondent determined the deficiency in controversy. These alleged errors will be considered in the order stated in the petition.

1. The petitioners allege that the respondent erred in including in the gross estate 1,550 shares of stock in the Fonda Glove Lining Company at $60 per share instead of $50 per share, as returned by the executors. At the hearing respondent conceded the contention of the petitioners on this issue, and we have accordingly found that the fair value of this stock at the date of decedent's death was $50 per share.

2 and 3. Under these assignments the petitioners allege that the respondent erred in including in the gross estate certain "French securities" at a valuation of $31,257.56 instead of $20,271, as returned by the executors, and in including in the gross estate certain "British securities" at $169,032.20 instead of $150,242.48, as returned by the executors.

The evidence establishes that, at the time of his death, decedent owned certain securities which were deposited in banks in France and England. After decedent's death one of the executors personally went to those countries to obtain possession of said securities, but the French banks refused to deliver the securities there to the executor until death taxes claimed by the French Government in the amount of $10,986.56 had first been paid. Likewise the English banks refused to turn over to the executor the securities in their possession until inland revenue dues claimed by the British Government in the amount of $18,789.72 had first been paid. The executors paid, out of moneys forming part of the estate in the United States, the taxes claimed by the two foreign governments, respectively, and the securities were thereby brought into the administration of the decedent's estate in the United States.

The securities were returned by the executors as a part of the gross estate at their value less the amount of taxes so paid to the French and British Governments. In determining the deficiency the respondent included the securities without deducting said taxes. The petitioners contend, first, that the securities should be included at their value less the taxes paid in order to obtain possession and bring them into the administration of the estate in the United States, and, secondly, in the alternative, that deduction of the taxes should be allowed as administration expenses if the securities are included in the gross estate at their full value.

We think these issues are controlled by the principles applied by the Supreme Court to strikingly similar facts in the case of *Frick* v.

*Pennsylvania*, 268 U. S. 473. We quote from the court's opinion as follows:

The decedent owned many stocks in corporations of states, other than Pennsylvania, which subjected their transfer on death to a tax and prescribed means of enforcement which practically gave these states the status of lienors in possession. As those states had created the corporations issuing the stocks, they had power to impose the tax and to enforce it by such means, irrespective of the decedent's domicile, and the actual situs of the stock certificates. Pennsylvania's jurisdiction over the stocks necessarily was subordinate to that power. Therefore to bring them into the administration in that state it was essential that the tax be paid. The executors paid it out of moneys forming part of the estate in Pennsylvania and the stocks were thereby brought into the administration there. We think it plain that such value as the stocks had in excess of the tax is all that could be regarded as within the range of Pennsylvania's taxing power. * * * So much of the value as was required to release the superior claim of the other states was quite beyond Pennsylvania's control. Thus the inclusion of the full value in the computation on which that state based its tax, without any deduction for the tax paid to the other states, was nothing short of applying that state's taxing power to what was not within its range. That the stocks, with their full value, were ultimately brought into the administration in that state, does not help. They were brought in through the payment of the tax in the other states out of moneys of the estate in Pennsylvania. The moneys paid out just balance the excess in stock value brought in. Yet in computing the tax in that state both were included.

We are of opinion that in so far as the statute requires that stocks of other states be included at their full value, without deducting the tax paid to those states, it exceeds the power of the state and thereby infringes the constitutional guaranty of due process of law.

In the same opinion from which the foregoing extract is quoted, the court calls attention to the fact that the Federal estate tax is imposed as an excise on the *transfer* of property from a decedent and takes effect at the instant of transfer.

The statute applicable here is the Revenue Act of 1926, which provides:

Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death.

Assuming, without here deciding, that the British inland revenue dues and the French death taxes took effect at the instant of decedent's death, and bearing in mind that the Federal estate tax here involved is an excise imposed upon the transfer of decedent's property by death, we think it is clear that the " interest of decedent at the time of his death " in the British and French securities, *which was transferred as a result of his death*, was the value thereof less the British and French taxes. In any event, certainly such diminished value is all

that was transferred and brought into the administration of his estate, and such interest is all that is subjected by the statute to tax. The respondent's action is, therefore, reversed.

Having reached the conclusion indicated, it is unnecesary to consider the petitioner's alternative plea that the amounts of the British and French taxes should be deducted as administration expenses.

4 and 5. These issues involve gifts of money made by the decedent to his brother, William Littauer, and to his niece, Catherine Louise Doeller, within two years of the date of his death. The gifts made by the decedent to his brother within such period aggregated $109,550, of which the respondent included in the gross estate $104,550, or the excess over $5,000. The gifts made by the decedent to his niece within said two-year period amounted to $9,544.15, of which the respondent included in the gross estate the excess over $5,000, or the net amount of $4,544.15.

At the hearing the petitioners offered evidence, without objection from the respondent, to establish that these gifts were in fact not made in contemplation of death, and admittedly being completed gifts at the time made, they could not have been intended by the decedent to take effect in possession or enjoyment at or after his death. Obviously, then, the respondent included said gifts in the gross estate in excess of $5,000, pursuant to section 302 (c) of the Revenue Act of 1926, which provides that:

Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title.

Upon completion of the testimony offered by the petitioners at the hearing, the respondent conceded that said gifts were in fact not made in contemplation of death, and that the amounts thereof included in the gross estate should be excluded in the redetermination of the deficiency. This constituted in effect a confession of error on the part of the respondent, and also an agreement or stipulation of the parties that the gifts should not be included in the gross estate. The statute, however, provides that gifts of the kind here involved "shall be deemed and held to have been made in contemplation of death," and so subject to tax. A conclusive presumption is raised by the statute which does not admit of rebuttal. The action of the respondent in confessing error, or if viewed as a stipulation of the parties, amounts substantially to a conclusion of law in direct con-

travention of the statute. In these circumstances, we can not give effect to such a confession or stipulation.

On the other hand, the same net result must be reached, but for an entirely different reason. The validity of the statute above quoted was considered by us in *Estate of Robert Todd Lincoln*, 24 B. T. A. 334, and we there held that the conclusive presumption provision of section 302 (c) of the Revenue Act of 1926 is unconstitutional. On authority of that decision, we hold here that, since the respondent included the gifts in question in decedent's gross estate because of such invalid statutory presumption, and it having been shown that the gifts in fact were not made in contemplation of death, the amounts included by the respondent will be excluded in redetermining the deficiency.

6. This assignment of error relates to the action of the respondent in disallowing a claim of Dr. Berg against the estate in the amount of $15,000 for surgical services rendered to the decedent. No evidence was offered thereon at the hearing, and for the purposes of this proceeding the issue may be considered as abandoned in view of the following statement of counsel for the petitioners:

> Now, your Honor, I think I made a misstatement when you asked me whether any of the items in the petition would not be pressed; the item of the bill of Dr. Berg will not be pressed at this time, that being in dispute, pending in the Surrogate's court, as to the amount.

7. This item relates to the claim of Dr. Elias Berg in the amount of $500, which, the evidence shows, was compromised and settled by the executors on October 23, 1930, for $250. The latter amount constitutes an allowable deduction from the value of the gross estate.

8 and 9. These issues involve additional income taxes of the decedent for the years 1927 and 1928, the amounts of which were originally in controversy. The matter was adjusted and on February 4, 1931, the executors paid the amounts set out in our findings of fact, which amounts will be allowed as deductions in redetermining the deficiency.

*Judgment will be entered under Rule 50.*