258 F.Supp. 502 (1966)
GENERAL BANCSHARES CORPORATION, a corporation, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 65 C 21(1).
United States District Court E. D. Missouri, E. D.
August 26, 1966.
*503 Owen T. Armstrong, Lowenhaupt, Chasnoff, Freeman & Holland, St. Louis, Mo., for plaintiff.
Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.
HARPER, Chief Judge.

MEMORANDUM OPINION
This suit was instituted by the plaintiff for a refund of income taxes paid by the plaintiff as a result of a deficiency assessment for the year 1958. The suit was timely filed and jurisdiction of this court exists under 28 U.S.C.A. § 1346. The deficiency assessment results from the disallowance of the deductions claimed by taxpayer for expenses paid incident to bringing itself into compliance with the Bank Holding Company Act of 1956.
The issue was submitted to the court on a Stipulation of Facts which incorporated a number of exhibits.
The evidence disclosed that plaintiff, General Bancshares, was a holding company known as General Contract Corporation, *504 and it owned the controlling interests in several banking and non-banking companies. After the enactment of the Bank Holding Company Act of 1956, the plaintiff was ordered by the Board of Governors of the Federal Reserve System to divest itself of all of its non-banking assets. On February 21, 1958, the plaintiff adopted a plan for divesting itself of its non-banking assets (hereafter referred to as the Plan); the Board of Governors of the Federal Reserve System approved the Plan on August 14, 1958. The Plan called for the plaintiff to organize a new corporation and to transfer all of its non-banking assets consisting of shares in non-banking corporations to the new corporation called General Contract Finance Corporation, in exchange for all of the new corporation's stock. The new corporation's stock was then immediately pro-rata distributed to the shareholders of the plaintiff. The plaintiff's name was changed from General Contract Corporation to General Bancshares Corporation. The whole Plan was completely carried out by December 31, 1958.
In its Federal Income Tax Return for the year 1958 the plaintiff claimed the following six items as deductions for business expenses:
(1) Documentary Stamps, $2,808.44 (excise tax on the transfer of the plaintiff's non-banking shares to the General Contract Finance Corporation).
(2) Accounting Fees, $2,667.01 (primarily the cost of preparing financial statements for submission to the stockholders prior to their approval of the plan).
(3) Engraving Plates, $1,140.00 (cost of making plates for new stock of the plaintiff company in order for the stocks of the plaintiff to read "General Bancshares Corporation", its new name).
(4) Printing Stock Certificates, $1,837.20 (cost of printing new stock certificates of the plaintiff company).
(5) Fee of Transfer Agent, $7,295.75 (cost of distributing the General Contract Finance Stocks to the shareholders of the plaintiff).
(6) Transfer Tax, $2,546.80 (cost of the excise tax on the transfer of the General Contract Finance Corporation's stock from the plaintiff corporation to the shareholders of the plaintiff).
The plaintiff's income tax return for the year 1958 was audited by an agent of the Internal Revenue Service and the deductions set out above were disallowed as not meeting the requirements of Section 162 of the Internal Revenue Code of 1954. Therefter, a deficiency was assessed and the plaintiff paid said deficiency. The plaintiff timely filed with the District Director of Internal Revenue its claim for a refund based on that part of the deficiency assessment attributed to the disallowance of the above six items, but the Director overruled the claim.
Since the facts are stipulated, the sole issue in this case is whether as a matter of law the six items of expenses claimed by the plaintiff in its 1958 income tax return are deductible under Section 162 of the Internal Revenue Code of 1954 as ordinary and necessary expenses of carrying on a trade or business.
Section 162 of the Internal Revenue Code has three requirements: (1) The expenses must be paid or incurred during the taxable year; (2) the expenses must be connected with the taxpayer's trade or business; and (3) the expenses must be ordinary and necessary. The first requirement is stipulated, and the expenses were so obviously connected with the taxpayer's business that the second requirement needs no discussion either. It is only with respect to the third requirement that the parties are in disagreement.
The plaintiff relies upon two main points. First, it contends that the expenses were incurred involuntarily because of the requirements of the Bank Holding Company Act of 1956; second, it contends that the expenses were incurred in connection with a partial liquidation and are, therefore, deductible *505 as ordinary and necessary business expenses.
The plaintiff's first point has no merit if the expenses were capital expenditures. The involuntary nature of a capital expenditure does not render the expenditure deductible under Section 162 of the Internal Revenue Code. Woolrich Woolen Mills v. United States, 289 F.2d 444 (C.A.3). The defendant concedes that if the expenses here involved are found to be non-capital in nature, they would be ordinary and necessary expenses under Section 162. So, the only question that need be answered in order to resolve this controversy is whether the expenses claimed by the plaintiff in its 1958 income tax return are capital or non-capital expenditures.
In Gravois Planing Mill Company v. C. I. R., 8 Cir., 299 F.2d 199, at page 206 the court said:
"Granting the existence of a partial liquidation, are the disbursements in question deductible? Two established propositions are perhaps starting points:
"The first is that the expenses of a reorganization or recapitalization do not qualify as ordinary and necessary business expenses. (Cases cited) * * *
"The second is that attorneys' fees and other expenses incurred in connection with a corporation's complete liquidation and dissolution are deductible. (Cases cited) * * *
"It would seem to us to follow from this that the expenses of a partial liquidation are deductible and for the same reasons which support the deductibility of expenses of a complete liquidation."
The court further said at page 208:
"* * * Where, however, a partial liquidation is accompanied by the corporation's recapitalization or reorganization, the transaction is to be viewed as a whole and its dominant aspect is to govern the tax character of the expenditures."
It must be noted that when it is said that the dominant aspect of the transaction prevails, this means a single transaction or plan and the expenses incidental thereto, and not a series of transactions or plans. Perhaps in an effort to strengthen their entire cases (an all or nothing approach) both parties have treated the present situation as one transaction or plan. There are actually two unrelated transactions or plans involved, even though they are referred to as one plan, and they were presented to the stockholders of the original corporation together, entitled "Plan of Reorganization". The court will refer to these plans as Plan No. 1 and Plan No. 2. Plan No. 1 called for the plaintiff to change its name and consequently to have new stock certificates engraved and printed. The expenses in connection with this plan were Items 3 and 4 set out in the facts above and amounting to a claimed deduction of $2,977.20. Plan No. 2 called for the plaintiff to create a new corporation (General Contract Finance Corporation) and to distribute the stock of this new corporation to the stockholders of the plaintiff. The expenses of this plan were the remainder of the items set out above and amounting to a claimed deduction of $15,318.00.
Plan No. 1 was completely unrelated to Plan No. 2. The fact that a new corporation was created did not cause the plaintiff to incur the expenses of changing its name. On the other hand, the fact that the corporation changed its name did not cause the corporation to create a new corporation. Neither plan's expenses were in the least way incidental to the other plan's expenses. Therefore, each plan will be considered on its own merits.
As was stated above, Plan No. 1 called for the plaintiff to do nothing more than to change its name. A business name is a capital asset. Rainier Brewing Co. v. C. I. R., 7 T.C. 162, aff'd 165 F.2d 217 (C.A.9); Merten's Law of Federal Income Taxation, Par. 22.49. Therefore, since the expenses listed in Items 3 and 4 were incurred in connection *506 with acquiring a capital asset, they were capital expenditures and not deductible under Section 162.
It is only with respect to Plan No. 2 that the partial liquidation-corporate reorganization question becomes applicable. If the dominant aspect of Plan No. 2 was a corporate reorganization the expenses incidental thereto will not be deductible. In determining what constitutes deductible expenses under Section 162, substance rather than form will be given controlling weight. Wolfington Body Co. v. Smith, 99 F.Supp. 788 (D.C. Pa.) See also, Case v. Comm'r, 103 F.2d 283, 286 (C.A.9). Thus, the only thing that concerns this court is the practical effect of the plan; that is, what actually happened as a result of the plan?
The defendant contends that the plaintiff's plan was designed for the continuance of its business activities which would be the antithesis of a liquidation; that the plan merely resulted in the continuation of all those business activities and investments as existed before the corporations split; and, that even if there was some partial liquidation, the expenses were still non-deductible capital expenditures because they were aimed at changing the corporate structure for future operations.
The defendant's entire argument appears to be simply that the business activities and investments of the plaintiff have continued intact, exactly as they were before the plan was initiated; thus, the plaintiff was acquiring or protecting a capital asset. Keeping in mind that only the practical effect of the plan is to be considered in determining the deductibility of the expenses and at the same time looking upon the plan solely from the position of the shareholders of the General Contract Corporation (now General Bancshares), the defendant's argument seems to have ample merit; that is, it is true that the shareholder's position with respect to the assets of the General Contract Corporation has remained unchanged as a result of the plan, and, simultaneously, it is true that the business activities have continued as before, except that now they are in the form of two corporations instead of one.
The problem with the defendant's contention is that the plan should be considered only from the position of the taxpayer, which is the plaintiff, General Bancshares, and not the shareholders of the resultant corporations. A corporation is a completely separate entity from its shareholders and is subject to a completely different set of taxes than are its shareholders. Thus, looking upon the plan solely from the position of the plaintiff taxpayer, what effect, as a practical matter, did the present plan have upon the taxpayer, General Bancshares Corporation?
General Bancshares acquired absolutely nothing as a result of the plan. Before the plan was initiated it was a corporation holding a large number of assets in both banking and non-banking businesses. After the plan was carried out it was a corporation with assets solely in the banking field. As far as the plaintiff was concerned its non-banking business had terminated regardless of the fact that the resultant corporations probably had the same shareholders as General Contract Corporation, and regardless of the fact that the General Contract Finance Corporation obtained its directorship from the plaintiff corporation's directors before the plan was put into effect. However, there was a provision barring common directorship between the resultant corporations.
The creation of the new General Contract Finance Company brought no organizational changes to the plaintiff. General Bancshares is organized exactly as General Contract Corporation was before the plan was initiated, except for the fact that it is now minus its non-banking assets which it liquidated in kind to its shareholders. The dominant aspect of the plan was the liquidation of the non-banking assets of the plaintiff and not the reorganization of the plaintiff.
For the foregoing reasons the plan which has been referred to here as *507 Plan No. 2 had as its dominant purpose the liquidation of the plaintiff taxpayer's non-banking assets, and was not a capital expenditure. Any corporate reorganization which may have occurred was purely incidental to the partial liquidation. Since the expenses of Plan No. 2 were not capital expenditures and the defendant has conceded that the expenses would be deductible if they were not capital expenditures, it is the opinion of this court that the District Director of Internal Revenue was in error in disallowing the plaintiff's claimed deduction under Section 162 for the expenses incurred in connection with Items 1, 2, 5 and 6.
This memorandum opinion and stipulation of facts filed with the court are adopted as the Findings of Facts, the memorandum opinion is adopted as the Conclusions of Law, and the attorneys for both parties will collaborate in preparing a judgment to be entered on behalf of the plaintiff, denying the plaintiff's right to refund based on Items 3 and 4, and granting a refund based upon Items 1, 2, 5 and 6, and submit same to the court for entry.