UNITED STATES of America,
Appellant,

v.

GENERAL BANCSHARES CORPORA-
TION, Appellee.

GENERAL BANCSHARES CORPORA-
TION, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18756, 18757.

United States Court of Appeals
Eighth Circuit.

Jan. 2, 1968.

Gilbert F. Andrews, Atty., Dept. of Justice, Washington, D. C., for the United States. Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Martin T. Goldblum, Attys., Dept. of Justice, Washington, D. C., and Richard D. Fitzgibbon, Jr., U. S. Atty. for the Eastern District of Missouri and John A. Newton, Asst. U. S. Atty., same district, were with Gilbert F. Andrews, Washington, D. C., on the brief.

Owen T. Armstrong, of Lowenhaupt, Chasnoff, Freeman & Holland, St. Louis, Mo., for General Bancshares Corp. and filed brief.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

This appeal and cross appeal concern questions of deductibility for federal income tax purposes of expenses incurred in carrying out a plan of divestment of non-banking assets intended to bring the taxpayer, General Bancshares Corporation, formerly General Contract Corporation, in compliance with the Bank Holding Act of 1956, 12 U.S.C. §§ 1841–1848; and the complementary income tax sections 26 U.S.C. §§ 1101–1103.

The District Court,[1] Chief Judge Harper, held that $15,318 of the $18,295 involved was deductible as an ordinary and necessary business expense and that $2,977 was nondeductible as a capital expenditure. The Government and the taxpayer appeal the adverse holdings.

The relevant facts were stipulated and consequently are not in dispute. The taxpayer was a holding company as defined under the Act, owning eight banks and approximately thirty finance, insurance agencies and other non-banking corporations. The book value of the non-banking assets accounted for approximately 45 per cent of the total assets of the taxpayer. After the enactment of the Bank Holding Act of 1956 the taxpayer proceeded to divest itself of all of its non-banking assets in order to comply with the Act. On February 21, 1958 taxpayer's directors adopted a plan of divestment which was certified by the Federal Reserve Board on August 14, 1958. A favorable tax ruling with respect to the divestment plan was issued by the Commissioner on September 11, 1958. The plan was approved by taxpayer's shareholders on November 11, 1958 and was carried out by December 31, 1958.

Under the plan of divestment the taxpayer organized a new corporation, General Contract Finance Corporation (G.C.F.C.), and transferred all of its non-banking assets, shares in non-banking corporations, to the new corporation in exchange for all of the stock of the new corporation. The new corporation stock was then immediately distributed pro rata to the shareholders of the taxpayer. The Act sets forth no particular method of separating and disposing of banking or non-banking assets. The plan utilized by the taxpayer is permissible and meets the requirements of §§ 1101–1103 I.R.C. of 1954, granting tax relief when compliance with the Act occurs by way of certain distributions to shareholders. The taxpayer also changed its name from General Contract Corporation to "General Bancshares Corporation." No outstanding shares of the taxpayer were redeemed or transferred, nor were any additional shares issued. New shares, of course, evidencing the change of corporate name were issued in exchange for the old shares.

On its federal income tax return for 1958, the taxpayer claimed six items as currently deductible business expenses: (1) Documentary stamps, $2,808 (excise tax on the transfer of the taxpayer's non-banking stocks to G.C.F.C.); (2) Accounting fees, $2,677 (primarily the cost of preparing financial statements for submission to the stockholders prior to to their approval of the plan); (3) Engraving plates, $1,140 (cost of making plates for new stock of taxpayer in order that the stock certificates read "General

1. The Memorandum Opinion of the District Court is reported at 258 F.Supp. 502 (E.D.Mo. 1966).

Bancshares Corporation"); (4) Printing stock certificates, $1,837 (cost of printing new stock certificates of taxpayer); (5) Fee of transfer agent, $7,295 (cost of distributing G.C.F.C.'s stock to the shareholders of taxpayer); (6) Transfer tax, $2,546 (cost of the excise tax on the transfer of G.C.F.C.'s stock from the taxpayer to the shareholders of taxpayer).

The Commissioner disallowed all of the above expenses as claimed deductions in failing to meet the requirements of § 162(a) of the Internal Revenue Code, 26 U.S.C. § 162(a), " * * * There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *." Taxpayer paid the resulting deficiency, filed a claim for refund which was denied, and then brought suit in the District Court. Our jurisdiction rests on 28 U.S.C. § 1291.

The sole issue before the District Court, and reviewed by this Court, is whether the amounts spent by the taxpayer in connection with the divestiture of its non-banking assets are currently deductible ordinary and necessary business expenses, or nondeductible capital expenditures. The Government contends that the District Court erred in holding that costs of documentary stamps, accounting fees, transfer agent fees, and transfer taxes (items 1, 2, 5 and 6 above) were deductible as ordinary and necessary business expenses. Taxpayer contends that the District Court erred in not holding the costs of making new engraving plates and the printing of new stock certificates in connection with its corporate name change (items 3 and 4 above) deductible as ordinary and necessary business expenses.

■■ Whether expenses are ordinary and necessary and thus currently deductible or are capital in nature and must be added to the cost basis of the capital asset depends on the character of the transaction to which they relate. The fact that the expenditures are incurred involuntarily because of the Bank Holding Act would not of itself make them deductible as ordinary and necessary expenses. Woolrich Woolen Mills v. United States, 289 F.2d 444 (3 Cir. 1961); R.K.O. Theaters, Inc. v. United States, 163 F.Supp. 598, 143 Ct.Cl. 39 (1958).

■ Generally capital expenditures occur when an improvement or betterment is made to a capital asset (§ 263 I.R.C.) or an expense is incurred in the purchase or sale of a capital asset or the collection of capital proceeds. See 4A Mertens, Law of Federal Income Taxation, (1966 Rev.) § 25.20, Capital Expenditures. To a considerable extent the tax treatment that is accorded the gain or loss realized on a financial transaction determines the proper characterization of the expense item which was incurred in effecting and completing the financial transaction. (Towanda Textiles, Inc. v. United States, 180 F.Supp. 373 (Ct.Cl. 1960)). Thus selling expenses incurred in the sale of a capital asset are treated as capital in nature and chargeable only against the capital proceeds;[2] while on the other hand expenses in maintaining a capital asset are currently deductible as are the usual and ordinary business expenses incurred in carrying on any trade or business. The precise slot into which a given expense is to be placed is at times extremely difficult to determine, as the expenses will often partake of the nature of both current and capital items. It, therefore, becomes necessary to view the expenses in context with the transaction in which they are incurred to

---

**2.** Spreckels v. Commissioner of Internal Revenue, 315 U.S. 626 (1942), (commissions on sale of securities) at 629, 62 S.Ct. 777 at 779, 86 L.Ed. 1073: "And in Helvering v. Union Pacific Co., 293 U.S. 282, 286 [55 S.Ct. 165, 79 L.Ed. 363,] this Court expressly recognized that such commissions have been 'consistently treated

* * * not as items of current expense, but as additions to the cost of the property or deductions from the proceeds of sale.' "; Irma Jones Hunt, 47 B.T.A. 829 (1942) (real estate commissions are offset against the sale price in computing gain).

assess their proper characterization. Mr. Justice Stewart in discussing this issue in Commissioner of Internal Revenue v. Tellier, 383 U.S. 687 pointed out at p. 689, 86 S.Ct. 1118, at p. 1120, 16 L.Ed.2d 185 (1966): ·

"Our decisions have consistently construed the term 'necessary' as imposing only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the [taxpayer's] business.' Welch v. Helvering, 290 U.S. 111, 113 [54 S.Ct. 8, 9, 78 L.Ed. 212]. Cf. Kornhauser v. United States, supra [276] at 152 [48 S.Ct. at 220, 72 L.Ed. 505,]; Lilly v. Commissioner [of Internal Revenue,] 343 U.S. 90, 93–94 [72 S.Ct. 497, 96 L.Ed. 769,]; Commissioner [of Internal Revenue] v. Heininger, 320 U.S. 467, 471; McCulloch v. [State of] Maryland, 4 Wheat. 316, 413–415 [4 L.Ed. 579]. The principal function of the term 'ordinary' in § 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset. Welch v. Helvering, supra, at 113–116 [54 S.Ct. 8, 78 L.Ed. 212]."

 Also, whether expenditures are ordinary and necessary business expenses is a question of fact. General Bancshares Corp. v. Commissioner of Internal Revenue, 326 F.2d 712, 717 (8 Cir. 1964); see also Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 475, 64 S.Ct. 249, 88 L.Ed. 171 (1943) ("[Q]uestions of fact in most instances."); Long v. Commissioner of Internal Revenue, 277 F.2d 239, 240–241 (8 Cir. 1960). As this Court observed

in General Bancshares, supra, 326 F.2d, at 714, the language of Mr. Justice Cardozo contained in Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933), concerning the meaning of "ordinary and necessary expenses" within the context of § 162 is appropriate:

"Here, indeed, as so often in other branches of the law, the decisive distinctions are those of degree and not of kind. One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." 290 U.S. at 114–115, 54 S.Ct. at 9.

In *General Bancshares,* supra, the Court felt that the answer to the "riddle" confronting it was compelled by established and controlling precedent differentiating between ordinary and necessary business expenses on one hand, and capital expenses on the other, with regard to holding that costs incurred by a corporation in issuing nontaxable stock dividends were capital in nature.

While the character of the expenditures at issue here, and their relationship to § 162, has not been established by precedent compelling us to reach a predetermined result under the facts of this case,[3] we look to appropriate statutes and cases for guidance, realizing that the decisive distinction dispositive of the issue is not to be supplied by "a ready touchstone", and that the issue is one of ultimate fact.

The District Court viewed the question for decision to be whether the expenses claimed by the taxpayer are capital or non-capital expenditures, since the Government concedes that if the expenses in-

---

3. However, in Transamerica Corp. v. United States, 254 F.Supp. 504 (N.D.Cal. 1966), the court held that a corporate taxpayer complying with the Bank Holding Company Act by transferring its bank stocks in exchange for all of the capital stock of a newly organized banking corporation, which stock was then distributed to its stockholders, could deduct expenses incurred in such a distribution as ordi-

nary and necessary business expenses, even though the corporate charter and capital stock remained intact for future operations, as the expenses of divestitures added nothing of value to the corporate structure other than taxpayer already had, but on the contrary lessened the intangible value of the corporate structure. *Transamerica* is now pending on appeal to the Ninth Circuit (No. 21,490).

volved are non-capital in nature, they would be ordinary and necessary business expenses under § 162. Section 263 of the Internal Revenue Code, 26 U.S.C. § 263, disallows deductions for capital expenditures, defining capital expenditures (in relevant part) as " * * * Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * * " [4]

Thus the District Court looked to the plan of divestment adopted by the taxpayer to determine what actually happened as a result of the plan and the effect the plan had upon the taxpayer. The District Court determined that actually two plans were involved: (1) Change of corporate name; (2) The divestiture plan of creating a new corporation to receive the non-banking assets, and that the taxpayer acquired absolutely nothing as a result of the plan No. 2. Taxpayer simply was no longer the holder of any assets in the non-banking field, and the divestiture of these assets did not operate to the benefit or improvement of taxpayer. The Court held that there was no organizational change in the taxpayer's corporate structure, except the lessening in value of its shares, which occurrence was purely incidental to taxpayer's divestiture of non-banking assets. Citing Gravois Planing Mill Co. v. Commissioner of Internal Revenue, 299 F.2d 199 (8 Cir. 1962), the court viewed the dominate purpose of the plan of divestment (again, excluding the change of corporate name) as liquidation of taxpayer's non-banking assets and not reorganization of taxpayer's business for future benefit, and allowed the expenditures related to the liquidation as deductions.

The Government maintains that the means by which taxpayer separated its banking and non-banking assets constituted a corporate reorganization, and that

the District Court was without sound basis for holding otherwise. The Government points to § 368 of the Internal Revenue Code, 26 U.S.C. § 368, captioned "Definitions relating to corporate reorganizations" and notes that taxpayer's plan of divestment substantially complies with § 368(a) (1) (D), the so-called "D" reorganization or spin-off section. The well settled rule that expenditures for corporate reorganization are capital expenses should then be applicable. General Bancshares, supra, 326 F.2d, p. 715; see 4A Mertens, Law of Federal Income Taxation, (1966 Rev.) § 25.35.

The Government further maintains that the divestment plan does not meet the definition of a partial liquidation as prescribed by § 346 of the Code, 26 U.S.C. § 346, (a point conceded by the taxpayer), making inapplicable those cases holding that expenses incurred in connection with partial liquidations constitute ordinary and necessary business expenses. Standard Linen Service, Inc. v. Commissioner, 33 T.C. 1 (1959); Tobacco Products Export Corp. v. Commissioner, 18 T.C. 1100 (1952). Likewise, the Government alternatively contends that if the transaction is viewed as a partial liquidation, it is coupled with a reorganization that is the dominant aspect of this whole transaction, and is, therefore, taxable under the "dominant aspect doctrine" of Gravois, supra. In Gravois, the dominant aspect criterion was applied to determine the character of the expense when a partial liquidation was accompanied by a corporate reorganization or change in corporate structure. In Gravois the existence of a formal liquidation was not in dispute, and there was a change in the corporation's capital structure by stock retirement and amendment of its capital authorization. Liquidation, however, was held to be the dominant aspect of the transaction as opposed to change or desired improvement

---

4. As noted in General Bancshares Corp. v. Commissioner of Internal Revenue, 326 F.2d 712, 716: "Section 263, with its denial of deductibility for specified capital expenditures, and § 162(a), with its grant of deductibility for ordinary and necessary business expenses, are not, of course, mutually exclusive. Neither are they together all inclusive."

in the corporate structure; and the expense of the partial liquidations were held deductible as ordinary and necessary expenses. The Government says the taxpayer's dominant intent was to continue the original businesses in multiple corporate solution with undiminished shareholder equity, the antithesis of liquidation, and thus the transaction falls squarely within the *Gravois* doctrine.

While the plan of divestment of taxpayer was not a distribution in partial liquidation as that term is defined in § 346, we do not believe that the failure of the plan to explicitly meet the definition necessarily disqualifies the expenditures connected with the divestment from consideration as ordinary and necessary business expenses. There is no doubt that taxpayer did divest itself of its non-banking assets, and that it incurred certain expenses in doing so. The primary purpose of § 346 is to define certain types of partial liquidations in redemption of corporate stock which shall be treated as in part or full payment in exchange for stock and taxable as capital gain or loss as distinguished from ordinary income. In other words, § 346 is addressed toward a tax question not at issue here, and is of little value in deciding the character of the expenses of a corporation making a distribution of its assets. We are here concerned with the effect on the taxpayer and not its shareholders.

Further, if taxpayer had carried out its plan of divestment in accordance with the provisions of § 346, while it might have been allowed deduction of expenses incurred, the distribution would have involved tax consequences to taxpayer's shareholders concerning whether the non-banking stocks received constituted taxable income. Taxpayer's plan of divestment took advantage of 26 U.S.C. §§ 1101–1103, "Distributions Pursuant to Stock Holding Company Act of 1956", enacted by Congress whereby distributions made pursuant to the Act could be made without ordinary income or capital gain consequences to distributee-shareholders.

However, the effect of the plan of divestment on the business operations of the taxpayer was the same as if its non-banking stocks were distributed via a cash dividend, a dividend in kind, a § 346 partial liquidation, or a distribution qualifying under §§ 1101–1103. Taxpayer suffered a contraction of corporate assets, having only assets in the banking field after the plan of divestment. A corporation is a separate entity from its shareholders, and is subject to taxation separate and apart from its shareholders While the same shareholders held the stock in both taxpayer and G.C.F.C. immediately after the plan of divestment, that coincidence was the only remaining connection between taxpayer and G.C. F.C., a coincidental circumstance that became at once subject to change as a result of the normal transfers of stock ownership. The taxpayer and G.C.F.C. became separate entities after the plan of divestment, not only as to corporate identity, but under a provision in the plan barring common directorship between the two corporations.

In *Gravois,* supra, 299 F.2d at pp. 208–209, the court enunciated the dominant aspect criterion following the approach (while reaching a different conclusion on the facts) of Mills Estate, Inc. v. Commissioner of Internal Revenue, 206 F.2d 244 (2 Cir. 1953) that " * * * the entire proceeding must be viewed as a single transaction. Substance and not form controls in applying a tax statute.' " 206 F.2d at 246. Significantly, we believe, the court in *Mills* stated: "Since we are not concerned with the tax liability of the stockholders who received part of the distribution of the cash but only with a matter affecting the tax liability of the corporation itself, whether part of what was done was a partial liquidation under section 115 I.R.C. is irrelevant." 206 F.2d at 246.

Thus, while *Gravois,* supra, did involve a stock redemption plan meeting the formal requirements of a partial liquidation, the dominant aspect approach in characterizing expenditures incident to a distribution or liquidation of corporate

assets vis-a-vis a concomitant corporate reorganization appears valid. This doctrine is not limited only to those expenditures incident to a distribution meeting the requirements of a § 346 partial liquidation. We do not purport to hold that any distribution of corporate assets pursuant to any and all corporate transactions is entitled to consideration under the *Gravois* test to determine its character, or even its dominant purpose. As noted in *General Bancshares,* supra, the character of some corporate transactions and distributions thereto has been clearly established. We merely hold, in agreement with the District Court, that the substance of the divestment plan of the taxpayer was such that it could be characterized as a partial liquidation for the purpose of determining whether expenses incurred in the liquidation were ordinary and necessary or capital in nature, and that the dominant aspect test was a proper approach to determine the issue.

The *Gravois* test is stated at p. 208 of 299 F.2d:

"Where, however, a partial liquidation is accompanied by the corporation's recapitalization or reorganization, the transaction is to be viewed as a whole and its dominant aspect is to govern the tax character of the expenditures. Mills Estate (2 Cir.), Standard Linen. Thus, where one has what is essentially 'a change in the corporate structure for the benefit of future operations', there is no deduction. Mills Estate (2 Cir.)."

The Government contends that the last quoted portion of *Mills,* supra, and a comparable statement in Farmers Union Corp. v. Commissioner of Internal Revenue, 300 F.2d 197, 200 (9 Cir. 1962), "Expenses incurred for the purpose of changing the corporate structure for the benefit of future operations are not ordinary and necessary business expenses * * *" states the dominant aspect of taxpayer's divestment plan and should control. As noted in *General Bancshares,* supra, the rationale behind decisions denying status as ordinary and necessary

business expenses to those costs which have to do basically with corporate structure is

"* * * that the purpose for which the expenditure is made has to do with the corporation's operations and betterment, sometimes with a continuing capital asset, for the duration of its existence or for the indefinite future or for a time somewhat longer than the current taxable year, in contrast to being devoted to the income production or other needs of the more immediate present." 326 F.2d at p. 715.

We believe that the District Court was correct in finding that the dominant aspect of taxpayer's plan of divestment was the liquidation of its non-banking assets and any reorganization of taxpayer was incidental to such liquidation. Any distribution or liquidation of capital assets effects some change in corporate structure, but such a change in corporate structure must be of some benefit, tangible or intangible, to the taxpayer in its future operations before it can be deemed more than incidental to the distribution or liquidation. While the Government argues that the expenditures at issue related to a permanent change in the primary corporate structure of the taxpayer which would permit indefinite continuation of taxpayer's original businesses with the same ownership producing an intended long-term benefit, we agree with the District Court that from the standpoint of the taxpayer-corporation, and not its stockholders or G.C.F.C., that the divestiture did not add anything of value to its corporate structure. Taxpayer's benefit from the plan, if it be deemed a benefit, was that its banking business remained intact for future business purposes, but the overriding aspect of the plan of divestment was the distribution of taxpayer's non-banking assets.

Taxpayer by divestment acquired no additional rights, nor was anything added to its corporate structure. It acquired no tangible or intangible assets nor did it

improve any remaining asset. Outstanding shares remained the same in number and par value, though their actual book value was diminished by the divestment of the non-banking assets. The expenses claimed and allowed by the District Court were necessarily incurred in formulating and consummating the divestiture of non-banking assets. None of these expenses relate to the organizational costs of G.C. F.C., the transferee of the non-banking assets. Basically there has been no corporate change or re-structuring of the taxpayer except the *pro tanto* contraction in value of its outstanding shares.

If these expenditures or any part of them had been for the incorporation of G.C.F.C. they would not be deductible. *General Bancshares,* supra; International Bldg. Co. v. United States, 199 F.2d 12, 26 (8 Cir. 1952), rev'd on other grounds 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953); Missouri-Kansas Pipe Line Co. v. Commissioner of Internal Revenue, 148 F.2d 460, 462 (3 Cir. 1945), 4A Mertens, Law of Federal Income Taxation, (1966 Rev.) § 25.35. However, none of the expenses here entailed relate to the corporate organization of G.C.F.C. but, with the exception of the corporate name change of taxpayer and the new stock certificates necessitated thereby, are concerned solely with the divestment of taxpayer's non-banking assets. These divestment expenses were undoubtedly ordinary and necessary in the divestment transaction. However, this is not conclusive as other necessary expenses in a capital transaction would carry the proper characterization of capital expenditures, such as a sale commission on a capital asset. Here there was no sale or transfer of capital assets that entailed an immediate tax consequence, and the fact remains that these divestment expenses did not improve or cause a betterment of any of the taxpayer's capital assets.

■ The District Court did not err in allowing deductions, as ordinary and necessary business expenses, of those expenditures related to the plan of divestment.

■ As to disallowance of taxpayer's claimed deductions for expenses involved in changing its corporate name, the District Court correctly found that the name change was not an integral part, but was in fact totally unrelated, to the plan of divestment. Taxpayer was known as "General Contract Corporation" before the plan of divestment was adopted. Taxpayer chose to name the corporation it organized to receive its non-banking assets "General Contract Finance Corporation." Taxpayer argues it was thus compelled to change its corporate name to "General Bancshares Corporation" because the Missouri statutes, § 351.110, R.S.Mo. (1949) V.A.M.S., provide that a corporate name cannot be the same as, or deceptively similar to, the name of an existing domestic corporation. We believe it is patently obvious that taxpayer could have chosen a name sufficiently distinctive from "General Contract Corporation" so that taxpayer would not have had to change its name. While taxpayer's name change might have been desirable, the decision to change was a policy matter that the directors and shareholders thought to be of benefit to its corporate operations. Expenses incurred by taxpayer in changing its name were expenditures made in connection with acquiring a capital asset, and, hence, not deductible as ordinary and necessary business expenses. A trade name or business name is a capital asset. 3B Mertens, Law of Federal Income Taxation, (1966 Rev.) § 22.49. See Ranier Brewing Co. v. Commissioner, 7 T.C. 162 (1946), aff'd 165 F.2d 217 (9 Cir. 1948); Rev.Ruling 55–694.

Judgment affirmed.