BILAR TOOL & DIE CORPORATION, FORMERLY FORWAY TOOL & DIE CO., INC., A MICHIGAN CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7411–72. Filed May 15, 1974.

*Richard U. Mosher*, for the petitioner.
*Peter M. Ritteman*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency of $5,520 in petitioner's Federal income tax for the fiscal year ended September 30, 1967. The only issue before the Court is whether petitioner is entitled to a deduction from its gross income as ordinary and necessary business expense under section 162(a) legal expenses incurred by it in a division of its business between its two 50-percent shareholders in the tax year at bar.

### FINDINGS OF FACT

The stipulated facts are found accordingly.

Petitioner, an accrual basis taxpayer, is a Michigan corporation with its principal office in Warren, Mich. Petitioner filed its Federal corporate income tax return for the fiscal year ended September 30, 1967, with the district director of internal revenue in Detroit, Mich.

Petitioner's business is the making of steel tools and dies for the manufacture of parts for automobile seats. Petitioner was incorporated in 1964 in Michigan as the Forway Tool & Die Co., Inc., the successor to a Michigan partnership of substantially the same name, formed in 1957, whose partners, William Markoff and Joseph Sakuta, became sole, equal shareholders in the corporation, each owning 212½ shares of the authorized 425 shares of stock. Markoff and Sakuta were also officers of the corporation; the directors were Markoff, Sakuta, and Lawrence Caloia, petitioner's foreman.

In 1967 a disagreement arose between Markoff and Sakuta as to management of the corporation. Markoff, whose part in petitioner's operation was largely outside the plant, felt that in his absences the

plant was not being run efficiently by Sakuta and Sakuta's son, who was also employed by petitioner. In addition, disagreement existed as to the level of responsibility Sakuta's son was to have in petitioner's operation.

On September 21, 1967, a special meeting of petitioner's board of directors produced the following resolution designed to divide the corporation between Markoff and Sakuta:

WHEREAS a disagreement has arisen between the stockholders of the Corporation which makes impossible the continued operation of the tool and die business in its present corporate form, and

WHEREAS, the stockholders have agreed upon a division of the business of the Corporation assets whereby approximately one-half (½) of the Corporation's total assets will be owned in separate corporate form by Joseph Sakuta and one-half (½) will continue in the Corporation which will be owned by William Markoff,

Now THEREFORE, in consideration of the premises it is resolved that:

The following Plan of Corporate Separation, hereinafter referred to as the Plan, is hereby approved, adopted and agreed upon:

### ARTICLE I

#### PLAN OF CORPORATE SEPARATION

\*      \*      \*      \*      \* .      \*      \*

2. ORGANIZATION OF TRANSFEREE CORPORATION. The Corporation shall cause to be organized, under the laws of Michigan, a new corporation to be known as FOUR-WAY TOOL AND DIE, INC., hereinafter referred to as the New Corporation, with powers and capitalization as set forth in the articles of incorporation annexed hereto as Exhibit 1. All of the authorized shares of the New Corporation shall be issued and delivered to the Corporation in full paid, nonassessable certificates. Simultaneously with the creation of New Corporation, the Corporation shall cause its name to be changed to BILAR TOOL & DIE CORPORATION.

3. TRANSFER OF ASSETS TO NEW CORPORATION. In exchange for the shares of stock of the New Corporation, the Corporation shall assign, transfer, convey, and deliver to the New Corporation the assets listed on Exhibit 2, attached hereto [deleted here] which shall be approximately one-half (½) of the assets of the Corporation, subject to liabilities of the Corporation to be assumed by the New Corporation listed on Exhibit 3 attached hereto [deleted here], as such assets and liabilities appear on the Closing Balance Sheet, subject however, to the following exceptions and adjustments:

(a) The Corporation shall retain the lands, buildings, and improvements owned by the Corporation and situate at Warren, Michigan. The land contract payable affecting such lands, buildings, and improvements shall be allocated to and remain the liability of the Corporation.

(b) Notwithstanding anything herein to the contrary, adjustments in cash and other assets shall be made to the extent necessary to equalize the net assets as between the Corporation and the New Corporation.

\*      \*      \*      \*      \*      \*      \*

6. UNKNOWN LIABILITIES. The Corporation, the New Corporation, Joseph Sakuta and William Markoff hereby jointly and severally guarantee payment of

all liabilities, obligations, debts, and demands of the Corporation (including, without limitation, claims for taxes of all kinds, penalties and interest), not specifically embraced or provided for in the Closing Balance Sheet of the Corporation. To that end, the Corporation and William Markoff on one hand, and the New Corporation and Joseph Sakuta on the other hand, shall jointly and severally, upon demand of the other, pay one-half of all such liabilities, obligations, debts, and demands, and one-half of all expenses necessarily incurred in defending against, compromising, or adjusting the same, as is certified in writing from time to time by Lattin, Sallan and Keystone. The parties liable on this guarantee shall be consulted before any such obligation is finally certified as payable. Any loss or profit to the Corporation after the Date of Closing shall not in anywise affect the guaranty of the parties hereunder for income and other taxes payable in respect of the Corporation's transactions prior to the Date of Closing.

7. CLOSING. The Plan shall become operative at the Date of Closing [September 30, 1967.] At 2:00 P.M. on such date, the transactions contemplated by the Plan shall be consummated at the office of the Corporation. The Corporation shall assign, transfer, convey and deliver to the New Corporation the various items of property required by the Plan. Joseph Sakuta shall deliver to the Corporation: (a) all of the shares of stock in the Corporation owned by him or his assigns; (b) resignations as a director, officer and employee of the Corporation, effective as of the Date of Closing; and (c) general releases in favor of the Corporation, excepting only obligations of the Corporation under the Plan. The Corporation shall deliver to Joseph Sakuta: (a) an opinion of counsel for the Corporation to the effect that the New Corporation has been duly organized under the laws of Michigan; (b) certificates for all the shares of the authorized stock of the New Corporation in such denominations as may be requested by Joseph Sakuta; and (c) a general release in favor of Joseph Sakuta, excepting only obligations of Joseph Sakuta under the Plan. Each of the parties shall execute and deliver such further instruments as may be reasonably requested by any other party in order to carry out the purpose and intent of the Plan.

On September 21, 1967, a special meeting of petitioner's stockholders was held and the following resolution was unanimously adopted:

RESOLVED, that the Plan of Reorganization adopted by the Board of Directors of the corporation on this 21st day of September, 1967 (a copy of which is attached to these minutes) be and it hereby is ratified and adopted.

On September 30, 1967, the plan was carried out. In pursuance thereof, Markoff and Sakuta met and mutually agreed as to which of petitioner's assets and liabilities were to be transferred to the new corporation created under the plan. Cash was used to compensate for the difference between the net book value of the assets transferred and that of the assets retained. As a result: (1) Petitioner's assets were reduced by $106,593.20, its liabilities by $11,509.82, and its shareholders' equity by $95,083.38; (2) petitioner's labor force contracted from between 15 and 20 employees to about 10; (3) the new corporation, Four-Way Tool & Die, Inc., received assets of book value $106,-593.20 which secured liabilities of $11,509.82—about two-thirds of the assets transferred consisted of cash and a company car; (4) the only

items received by petitioner were 212½ shares of its own stock, a release of liability from Sakuta to petitioner (excepting liabilities specified by the plan), and Sakuta's resignation as an officer and director of petitioner; and (5) all relationship between petitioner and the new corporation ceased—the two became wholly separate entities, except for obligations created by the plan. The change of petitioner's name to Bilar Tool & Die Corp. was the only amendment made to petitioner's corporate charter.

It is stipulated that the series of events described above constitute a single unified plan.

Both the old and the new corporations have continued in the same business since the separation, and compete with each other for business.

Petitioner incurred legal and accounting fees in the amount of $11,500 [1] in connection with the plan. $4,000 of this amount was paid to the law firm that performed the legal services in connection with the plan. $400 of that legal fee was attributable to the incorporation of the new corporation. Petitioner claimed the entire amount of the fees as a deduction on its income tax return for its fiscal year September 30, 1967.

In his notice of deficiency respondent determined that none of the fees were deductible for the reason that "it has not been established that the amounts incurred constitute ordinary and necessary business expenditures."

#### OPINION

The only issue for decision is whether all or any part of the legal and accounting fees incurred by petitioner in connection with the development and carrying out of the plan to split petitioner's business into two separate corporations with one of petitioner's 50-percent stockholders becoming the sole stockholder of petitioner and the other stockholder becoming the sole stockholder of a new corporation, are deductible as ordinary and necessary business expenses.

The plan of separation is described in detail in our Findings of Fact. A brief description of the plan is as follows. Petitioner caused a new corporation to be formed with a name similar to petitioner's then name, and simultaneously petitioner's name was changed to its present name. Petitioner transferred one-half of its assets to the new corporation in exchange for all of the capital stock of the new corporation. Petitioner then exchanged all of the stock of the new corporation for

---

[1] This statement is stipulated. The partner of the law firm that performed the legal services who was primarily responsible for devising and carrying out the plan of separation testified about the legal services rendered, supported by the firm's time sheet on this particular transaction. He testified that his firm was paid $4,000 in legal fees for services in connection with the plan. No evidence was presented showing to whom or for what purpose the remaining $7,500 in fees were paid.

Joseph Sakuta's 212½ shares of petitioner's stock after which Markoff's 212½ shares were all of the shares of petitioner's stock that were issued and outstanding. Petitioner continued in the same business under the control of Markoff and the new corporation became engaged in the same business under the control of Sakuta. The two corporations were thereafter entirely independent of each other.

Petitioner claims the legal and accounting expenses involved were ordinary and necessary business expenses deductible under section 162, I.R.C. 1954.[2] Respondent's principal argument is that the expenses constitute nondeductible capital expenditures under section 263.

The transaction here involved has some aspects of a corporate reorganization and some aspects of a partial liquidation of petitioner. It is well established that expenses incurred in organizing and reorganizing a corporation are treated as nondeductible capital expenditures for tax purposes. It is also established that expenses incurred in complete and partial liquidation of a corporation are deductible as ordinary and necessary business expenses. *Mills Estate, Inc.*, 17 T.C. 910 (1951), reversed in part 206 F. 2d 244 (C.A. 2, 1953) ; *Tobacco Products Export Corporation*, 18 T.C. 1100 (1952) ; *Standard Linen Service, Inc.*, 33 T.C. 1 (1959) ; *Gravois Planing Mill Co.* v. *Commissioner*, 299 F. 2d 199 (C.A. 8, 1962), reversing a Memorandum Opinion and decision of this Court; *United States* v. *General Bancshares Corporation*, 388 F. 2d 184 (C.A. 8, 1968) ; *United States* v. *Transamerica Corporation*, 392 F. 2d 522 (C.A. 9, 1968), affirming 254 F. Supp. 504 (N.D. Cal. 1966) ; *E. I. duPont DeNemours & Co.* v. *United States*, 432 F. 2d 1052 (C.A. 3, 1970) ; *Skaggs Companies, Inc.*, 59 T.C. 201 (1972). A difficult question is posed, however, when the transaction or transactions in which the expenses were incurred have some of the characteristics of a corporate reorganization and some of the characteristics of a partial liquidation or other ordinary and necessary expenses of a business, such as is the situation here. All of the cases cited above involved such situations. From those cases we glean the following.

This Court, in *Mills Estate* and *Tobacco Products Export Corporation*, allocated the legal expenses incurred between the deductible (liquidating) and nondeductible (reorganizational) aspects of the transaction. The Court was reversed in part by the Second Circuit in *Mills Estate*, that court taking the position that where all of the steps taken were part of a single transaction, the expenses incurred were all either deductible or nondeductible, depending on which aspect was the dominant aspect or purpose of the transaction as a whole. The court found the dominant aspect to be capital in nature and disallowed the

---

[2] References are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

entire deduction. In *Standard Linen Service*, this Court recognized the possible dual purpose involved in the expenditure but disallowed the entire deduction because petitioner had failed to carry its burden of proving that any of the expenses were ordinary and necessary business expenses and said that it was, therefore, immaterial whether all of the expenses qualified as capital expenditures. However, in the most recent case decided by this Court, *Skaggs Companies, Inc., supra*, we said: "The case law in this area does not consider the character of each individual expense as dispositive. Rather, the courts look to the nature of the underlying transaction upon which the expense in question was incurred," citing the *General Bancshares* and *Transameria Corporation* cases. We concluded that the expenses there involved were all related to a reshuffling of the capital structure within the framework of an existing corporation which was essentially a recapitalization and were, therefore, nondeductible capital expenditures.

As noted above, the Second Circuit, in reversing this Court in *Mills Estate*, espoused the dominant-purpose test, i.e., all or nothing if it was a single integrated transaction. In *Gravois Planing Mill*, the Eighth Circuit, speaking through Judge, now Justice, Blackmun, followed the lead of the Second Circuit in placing emphasis on the dominant aspect of the transaction, but concluded that the dominant aspect of the transaction there involved, on facts quite similar to those here involved, was the partial liquidation of the corporation and not the recapitalization, and that the legal fees and expenses incurred were deductible in their entirety. Similarly, the Eighth Circuit in *General Bancshares Corporation*, and the Ninth Circuit in *Transamerica Corporation*, utilized the dominant-purpose approach and allowed a deduction of the expenses incurred in spinning off parts of those businesses to meet the requirements of the law. In the *duPont de Nemours* case, the Third Circuit denied in full the deduction of legal expenses incurred in splitting up a Canadian subsidiary to comply with an antitrust court order because at least a part of the expenditures was attributable to restructuring the corporate enterprise that would benefit petitioner in the future and was thus capital in nature and, since petitioner had offered no breakdown of the expenses, all was disallowed.

While we believe there may be circumstances in which two or more independent purposes may be accomplished by an expenditure for legal services in related transactions and that the expenditure may be allocated and treated differently if the evidence justifies it, the trend of the cases seems to be that where all of the steps taken for which the expenditures are incurred are clearly a part of a single transaction, the courts should look to the nature of the underlying transaction to determine whether the expenses were ordinary and necessary business ex-

penses or were capital in nature. Since the legal services here involved about which we have evidence were clearly rendered in accomplishing a single integrated plan of separation of the corporation's business, we will treat that expenditure of $4,000 in its entirety as attributable to the underlying nature of the entire transaction, which we must now determine. We find nothing in the recent Supreme Court opinions in *Woodward* v. *Commissioner*, 397 U.S. 572 (1970), and *United States* v. *Hilton Hotels Corporation*, 397 U.S. 580 (1970), which would undercut this approach, as suggested by respondent. In those cases the Court rejected the taxpayers' arguments that the issue of deductibility should be controlled by the primary purpose and ultimate result of the expenditure but said instead that the issue should be decided from the nature of the litigation from which the claim originated. In those cases there was no question that the underlying litigation or transaction was of a capital nature while our task here is to decide the underlying character or nature of the transaction.

We find that the underlying purpose which the $4,000 in legal fees was incurred to accomplish was to divide petitioner's business and its assets between the two equal stockholders so petitioner's business could be continued without the friction which had developed and which was interfering with the proper conduct of that business. The necessity to solve this problem was directly related to petitioner's business.[3] The $4,000 in legal fees incurred in solving the problem were of the usual type that would be involved in working out the solution, and no claim is made that they were unreasonable. They were ordinary and necessary to accomplish the objective sought. See *Transamerica Corporation* v. *United States*, 254 F. Supp. 504 (N.D. Cal. 1966).

We recognize that expenditures may be considered ordinary and necessary but may still not be deductible because they are incurred in connection with the continuation or acquisition of a capital asset and are thus capital in nature. *Standard Linen Service, Inc., supra; Mills Estate, Inc., supra*. So we must determine whether these expenditures were capital in nature.

"Generally capital expenditures occur when an improvement or betterment is made to a capital asset (§ 263 I.R.C.) or an expense is incurred in the purchase or sale of a capital asset or the collection of capital proceeds." *United States* v. *General Bancshares Corporation, supra* at 187. The expenditures here involved do not qualify under that definition. So far as the corporate petitioner is concerned, there was no improvement or betterment of any capital asset it owned. Nor did it acquire capital assets as a result of the plan. The only

---

[3] Compare *General Pencil Co.*, a Memorandum Opinion of this Court dated June 7, 1944, in which legal fees were held deductible under somewhat similar circumstances.

tangible asset it ultimately received under the plan was 212½ shares of its own stock. Under Michigan law "treasury shares are issued shares, but not outstanding shares, and *are not assets* [emphasis added]." Mich. Stat. Ann. sec. 21.200(110)(2) (1973). In any event receipt of its own shares by a corporation typically occurs in a partial liquidation. Petitioner acquired nothing that would be of any benefit to it in its future operations. See *Gravois Planing Mill Co.* v. *Commissioner, supra.* In fact, it gave up one-half of its assets and its corporate name.

Respondent argues that this transaction qualifies as a corporate reorganization under section 368(a)(1)(D) of the Code and, therefore, the expenses involved were capital expenditures. We do not believe the solution to this issue depends on whether or not this transaction technically qualifies as a reorganization under section 368 (a)(1)(D). The provisions of that section relative to divisive reorganizations were enacted to determine whether gain or loss will be recognized at the shareholder level in certain corporate restructuring. What we must decide here is whether the transaction was essentially a reorganization in the sense that it affected a change in the corporate structure for the benefit of future operations. *Mills Estate* v. *Commissioner*, 206 F. 2d 244 (C.A. 2, 1953). We do not believe this transaction was essentially such a reorganization as so defined. Nor do we find that the plan resulted in a reshuffling of the capital structure within the framework of an existing corporation, and thus a recapitalization, as was found in *Skaggs Companies, Inc., supra.* There was no change or reshuffling of petitioner's capital structure; in fact, the only change in its charter was the change in its name.

Viewing this transaction from the standpoint of the corporate petitioner, as we think we must, see *United States* v. *General Bancshares Corporation, supra* at 191, this transaction was a partial liquidation in the sense that petitioner divested itself of part of its assets in return for part of its stock and continued in business on a reduced basis. The reason for doing this was closely related to the conduct of its business; the plan was adopted to avoid the disrupture the friction between Markoff and Sakuta, and between Sakuta and the plant foreman, was developing. Petitioner's officers considered the separation to be essential to the successful continuation of the business. The legal fees incurred were all attributable to carrying out the entire plan, and while those attributable to organizing the new corporation might be deemed to be capital expenditures when viewed in isolation, the organization of the new corporation was but an integral step in the overall plan, the dominant aspect of which was a division of the busi-

ness through a partial liquidation.[4] These expenses were not capital expenditures but were ordinary and necessary business expenses of petitioner deductible under section 162(a) of the Code.

Respondent makes two arguments on brief that were not mentioned prior to the trial. One is that the fees involved were incurred for the benefit of Markoff and Sakuta and are, therefore, not deductible by the corporation. The other is that petitioner has failed to prove what $7,500 of the fees were for and has thus failed to carry its burden of proving that they were ordinary and necessary business expenses. Nowhere in his notice of deficiency nor in his pleadings nor during the course of the trial did respondent raise an issue that the fees were not incurred for the benefit of petitioner corporation, and it would not be just to consider that argument at this time, and we refrain from doing so.

With reference to the $7,500 in fees, the attorney who testified stated that his fee totaled $4,000. There was no evidence presented with respect to the balance of the fees, despite the fact that this situation was called to the attention of counsel for both parties by the Court before the record was closed. While it was stipulated that the entire $11,500 in legal and accounting fees was incurred in connection with the plan, this falls short of proving that the $7,500 in fees were ordinary and necessary business expenses, which petitioner had the burden of proving. See *Standard Linen Service, Inc., supra; Gravois Planing Mill Co.* v. *Commissioner, supra.* We must, therefore, deny a deduction for the $7,500 in fees for failure of proof.

To permit adjustments in tax for items conceded by petitioner,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

SIMPSON, *J.*, dissenting: With due respect to my colleagues, I suggest that they have allowed the trees to obscure their view of the forest in this case. They have concluded that because there was a partial liquidation of the petitioner, all the expenses of carrying out the plan are deductible. In my opinion, we should not allow the form of that transaction to determine the tax consequences of the entire plan (*Gregory* v. *Helvering*, 293 U.S. 465 (1935)); nor should we look only to that step in what is a series of steps to determine the character

---

[4] The parties stipulated that the events that transpired constituted a single unified plan and that the expenses here involved were incurred in connection with the plan. Neither party argued that there should be an allocation of the legal fees, as was done by this Court in *Mills Estate, Inc.,* 17 T.C. 910 (1951), reversed in part 206 F. 2d 244 (C.A. 2, 1953), so we have adopted the approach of the parties and do not reach the question whether specific expenses would, under other circumstances, be deductible.

of the expenses (*Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945); *American Manufacturing Co.*, 55 T.C. 204 (1970)).

The Court recognizes that the partial liquidation of the petitioner was merely one step in the accomplishment of the whole plan. A new corporation was formed, the petitioner transferred assets to it and received its stock in exchange therefor, and the petitioner then distributed that stock to one of its shareholders in redemption of his stock in the petitioner. Each step in the series was interdependent on the other steps, and they were all integral parts of the ultimate plan.

Before these events took place, there was one corporation, conducting the business of manufacturing tools and dies, owned by two shareholders. After the completion of all steps in the plan, the business was divided into two parts—each business was owned by a separate corporation, and each corporation was owned by a single shareholder. There was not a mere liquidation of part of the business; the businesses continued to be operated, but in different corporate form with different ownership. In my judgment, any realistic analysis of these facts demonstrates that the ultimate purpose and effect of the various steps in the plan were to bring about a reorganization of the form and operations of the businesses. *American Manufacturing Co.*, *supra* at 222–224; compare *Standard Realization Co.*, 10 T.C. 708 (1948); *George D. Graham*, 37 B.T.A. 623 (1938).

In *Mills Estate* v. *Commissioner*, 206 F. 2d 244 (C.A. 2, 1953), reversing in part and remanding 17 T.C. 910 (1951), the court held that there is a reorganization and the expenses are not deductible when the changes in the corporate structure are made for the benefit of the continued conduct of the business. See also *United States* v. *General Bancshares Corporation*, 388 F. 2d 184, 191 (C.A. 8, 1968); *Gravois Planing Mill Co.* v. *Commissioner*, 299 F. 2d 199, 208 (C.A. 8, 1962), reversing a Memorandum Opinion of this Court. When I apply that test to the facts of this case, I reach the same conclusion as the court did in *Mills Estate*. There were changes in the corporate structure—before the plan, there were two shareholders, but after the plan, there was only one shareholder of each corporation. These changes were made because of the friction that existed between the shareholders, and they were made so that the businesses could continue to be operated without such friction. Cf. *James Kuper*, 61 T.C. 624, 632–633 (1974).

Finally, by its opinion in this case, the Court has gone further than other decisions by allowing a deduction for expenditures that were clearly capital in nature. Here, we have allowed a deduction for the expenses of organizing the new corporation, although similar expenses were not allowed in *United States* v. *General Bancshares*

*Corporation, supra* at 192, where the court bifurcated the transaction and denied a deduction for the capital expenses of the "unrelated" plan and in *United States* v. *Transamerica Corporation*, 392 F. 2d 522 (C.A. 9, 1968), where such expenses were not claimed as deductions by the taxpayer. The courts in both cases clearly indicated that capital expenditures incurred in the transaction were not deductible. To allow a deduction for expenditures that are clearly capital in nature merely because they are part of a liquidation is contrary to the well-established principles of tax law and the position of this Court (*Of Course, Inc.*, 59 T.C. 146 (1972), on appeal (C.A. 4, Mar. 15, 1973)), and cannot be justified by the apparent stipulation of the parties. *Estate of Sanford* v. *Commissioner*, 308 U.S. 39, 51 (1939) ; *Estate of Viola F. Saia*, 61 T.C. 515, 519–520 (1974) ; *Bloomfield Steamship Co.*, 33 T.C. 75, 85–86 (1959), affirmed per curiam 285 F. 2d 431 (C.A. 5, 1961) ; *Lucius N. Littauer et al., Executors*, 24 B.T.A. 983, 988–989 (1931), rehearing 25 B.T.A. 21, 25–26 (1931) ; *Ohio Clover Leaf Dairy Co.*, 8 B.T.A. 1249 (1927), affirmed per curiam 34 F. 2d 1022 (C.A. 6, 1929), certiorari denied 280 U.S. 588 (1929).

DAWSON, FORRESTER, IRWIN, and QUEALY, *JJ.*, agree with this dissent.