T.C. Summary Opinion 2009-135

UNITED STATES TAX COURT

JOSEPH E. AND CECILIA A. MORRISSEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12068-06S.              Filed September 2, 2009.

Joseph E. and Cecilia A. Morrissey, pro sese.

<u>Randall Preheim</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to
section 7463(b), the decision to be entered is not reviewable by

---

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue, Rule
references are to the Tax Court Rules of Practice and Procedure,
and dollar amounts are rounded to the nearest whole dollar.

any other court, and this opinion shall not be treated as precedent for any other case.

Petitioners petitioned the Court to redetermine Internal Revenue Service (IRS) determinations relating to their Federal income taxes for taxable years 2001, 2002, and 2003 (the years at issue). The IRS determined the following:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|---------------------|
| 2001 | $4,652 | $818 |
| 2002 | 6,118 | 1,072 |
| 2003 | 2,123 | 425 |

After concessions,[2] the issues for decision are whether petitioners: (1) Were engaged in an activity for profit and thus whether $400 reported as income on Schedule C, Profit or Loss From Business, and claimed Schedule C deductions were proper; (2) are entitled to itemized deductions in amounts greater than the IRS allowed for each year in issue; (3) are entitled to a capital loss deduction greater than the IRS allowed for 2002; and (4) are liable for an accuracy-related penalty for each year in issue.

---

[2] Petitioners conceded that they are not entitled to the educator expense deduction claimed for 2002 and that they are not entitled to the gambling loss deduction claimed for 2003. Respondent conceded that petitioners' 2002 individual retirement account distribution is not taxable. Petitioners concede that their job expenses and miscellaneous deductions do not exceed the 2-percent floor imposed by sec. 67 for any year in issue. Other concessions will be addressed in the discussion.

## Background

The parties submitted a stipulation of facts with accompanying exhibits, and we incorporate the stipulation and those exhibits by this reference. Petitioners were married to each other throughout the years at issue, and they filed their taxes jointly, using Form 1040, U.S. Individual Income Tax Return, for each year. They resided in Colorado when they petitioned the Court.

Joseph E. Morrissey (hereafter petitioner) worked full time for the IRS from 1998 to 2006, initially as a customer service representative and finally in a collections function. The record does not reflect that the IRS provided any specific tax return preparation training to petitioner. Cecilia A. Morrissey (hereafter Mrs. Morrissey) worked for AT&T in 2001 and 2002 and for Comcast for part of 2003. In October 2003 Mrs. Morrissey commenced work for the IRS as a customer service representative. The IRS provided her with several months of training on Form 1040 and Schedule A, Itemized Deductions, in order to certify her to answer taxpayer questions about those forms.

Petitioner was also licensed as a real estate agent in Colorado. During 2001 he received $400 as payment for assisting two or three people to improve their credit scores so each might qualify for a mortgage to purchase real estate. Petitioner did not have contracts for the sale of any real estate, he did not

have listings for real estate, and he did not earn income or commissions from any real estate transactions during any of the years in issue. Petitioner reported the following on Schedule C for his purported business activity:

| Item | 2001 | 2002 | 2003 |
|---|---|---|---|
| Gross receipts or sales | $400 | -0- | -0- |
| Returns and allowances | -0- | -0- | $1,500 |
| Gross income | 400 | -0- | (1,500) |
| Total expenses | (19,802) | ($19,700) | (9,276) |
| Net profit or (loss) | (19,402) | (19,700) | (10,776) |

Examples of business expenses petitioner reported and included in total expenses on Schedules C include: Payments to petitioners' children to help petitioner with his computer, claimed as advertising expenses; funds given to petitioner's brother, claimed as bad debt expense; personal automobile insurance, AAA membership, and homeowners insurance, claimed as business expenses; life insurance premiums on policies covering both petitioners and the cost of a theft insurance policy, claimed as employee benefit programs; home repairs and remodeling expenses following petitioner's breaking a water pipe in his home and causing water damage; expenses of traveling and staying a week in petitioners' timeshare condominium in Florida, claimed as an expense relating to petitioner's real estate activity; tickets for petitioners to attend concerts, claimed as real estate expenses; interest expenses for finance charges on cash advances

from petitioners' credit union and interest paid on a life insurance policy loan, also deducted on Schedule A, claimed as business interest.

Petitioners claimed the following deductions on Schedule A, for the years in issue:[3]

| Deduction claimed | 2001 | 2002 | 2003 |
|---|---|---|---|
| Medical and dental expenses | $3,186 | $4,798 | $1,709 |
| Taxes | 4,968 | 4,585 | 3,914 |
| Interest | 9,354 | 8,636 | 8,774 |
| Gifts to charity (1040X for 2001) | 3,408 | 2,925 | 3,119 |
| Job expenses and miscellaneous deductions (subject to 2% floor) | 2,398 | 2,452 | 494 |
| Miscellaneous deductions (not subject to 2% floor) | 1,500 | -0- | 150 |
| Total itemized deductions | 24,814 | 23,396 | 18,160 |

The IRS issued a notice of deficiency on April 10, 2006, determining deficiencies in petitioners' income taxes for the years in issue. The IRS disallowed in full the deductions petitioners claimed for petitioner's purported business activity, determining that petitioner did not establish either that he conducted his activity for profit, that the expenses were ordinary and necessary expenses, or that he expended funds for the purposes reported on his Schedules C.

_____

[3] Petitioners submitted a Form 1040X, Amended U.S. Individual Income Tax Return, in March 2002 to correct a $1,842 overstatement of their charitable contributions for 2001. This adjustment reduced their claimed contributions from $5,250 to $3,408. The IRS accepted this adjustment and determined a deficiency relative to the smaller amount.

The IRS also disallowed certain of petitioners' claimed itemized deductions, as follows:

| Disallowed deductions | 2001 | 2002 | 2003 |
|---|---|---|---|
| Medical and dental expenses | $2,547 | $4,798 | $1,709 |
| Taxes[1] | 845 | (59) | (711) |
| Interest | -0- | 313 | 1,257 |
| Gifts to charity (after 1040X) | 567 | 173 | 666 |
| Job expenses and miscellaneous deductions (subject to 2% floor)[2] | 2,398 | 2,452 | 494 |
| Miscellaneous deductions (not subject to 2% floor) | 1,500 | -0- | -0- |
| Total disallowed deductions | 7,857 | 7,677 | 3,415 |

[1] The amounts in parentheses represent amounts the IRS allowed in excess of the amounts petitioners claimed.
[2] As indicated, petitioners conceded that they are not entitled to any deductions for job expenses or miscellaneous deductions.

In the notice of deficiency the IRS explained that many of petitioners' medical expenses were not allowable and that petitioners' deductible medical expenses exceeded the 7.5-percent floor by $639 in 2001 but did not exceed the floor for either 2002 or 2003. The IRS disallowed petitioners' claimed deduction for sales tax paid when they purchased a car in 2001 but allowed additional deductions for taxes paid of $59 and $711, respectively, for 2002 and 2003. The IRS disallowed some of petitioners' claimed interest expense deductions and charitable contribution deductions, determining that petitioners did not substantiate that the amounts were paid or that the expenditures, if incurred, were properly deductible. Finally, the IRS

determined that the $1,500 miscellaneous deduction petitioners claimed in 2001 and described as "Lawyers" was nondeductible because petitioners did not establish:  That the expense was an ordinary and necessary business expense, that it was paid, or if paid that it was expended for the production of income.  The IRS noted that if this $1,500 was deductible, then it was deductible as a miscellaneous itemized deduction subject to the section 67 limitation, and it was taxable when the amount was returned in 2003.

For convenience, additional findings of fact are combined with the discussion of each issue.

### Discussion

#### I.   Schedule C Expenses

The Commissioner's determinations are presumed correct, and a taxpayer bears the burden of proving that a determination set forth in a notice of deficiency is incorrect.  See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that he is entitled to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Although section 7491(a) may shift the burden of proof to the Commissioner, that

section is not applicable where, as here, a taxpayer has failed to satisfy the recordkeeping and substantiation requirements of the Code. See sec. 7491(a)(2)(A) and (B).

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on a trade or business. An ordinary expense is one that is common and acceptable in the particular business. Welch v. Helvering, supra at 113-114. A necessary expense is an expense that is appropriate and helpful in carrying on the trade or business. Heineman v. Commissioner, 82 T.C. 538, 543 (1984).

Section 183(a) provides generally that in the case of an individual, no deduction attributable to an activity which is not engaged in for profit is allowed except as provided in section 183(b). Section 183(b)(1) allows those deductions which would be allowable without regard to whether the activity is engaged in for profit. Section 183(b)(2) allows a deduction equal to the amount of the deductions that would be allowable for the taxable year if the activity were engaged in for profit, but only to the extent the gross income derived from the activity exceeds the deductions allowable under section 183(b)(1).

Section 183(c) defines "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions are allowable

under section 162 for expenses related to a taxpayer's carrying on a trade or business and under section 212(1) and (2) for expenses incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income.

The test for determining whether an activity is engaged in for profit is whether the individual is engaged in the activity with "the actual and honest objective of making a profit."  See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); Brannen v. Commissioner, 78 T.C. 471, 502 (1982), affd. 722 F.2d 695 (11th Cir. 1984); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Although a taxpayer need not have a reasonable expectation of earning a profit, he must have entered into or continued the activity with a bona fide objective of doing so.  See Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Beck v. Commissioner, 85 T.C. 557, 569 (1985); Dreicer v. Commissioner, supra; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. "[P]rofit" in this context means economic profit, independent of tax savings.  See Hayden v. Commissioner, 889 F.2d 1548, 1552 (6th Cir. 1989), affg. T.C. Memo. 1988-310; Antonides v.

Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Landry v. Commissioner, 86 T.C. 1284, 1303 (1986).

Whether a taxpayer engages in an activity with the requisite profit objective is a question of fact to be resolved on a consideration of all the facts and circumstances in the record. See Lemmen v. Commissioner, 77 T.C. 1326, 1340 (1981); Allen v. Commissioner, supra; sec. 1.183-2(b), Income Tax Regs.  A taxpayer bears the burden of proving that he engaged in the subject activity with the requisite profit objective, and greater weight is given to objective facts than to his mere statement of intent.  See Rule 142(a); Siegel v. Commissioner, 78 T.C. 659, 699 (1982); Churchman v. Commissioner, 68 T.C. 696, 701 (1977); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., lists the following factors relevant to determining whether an activity is engaged in for profit:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) an expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal

pleasure or recreation involved.  These factors are not exclusive, and no single factor or number of factors is conclusive in determining whether an activity is engaged in for profit.  See Dreicer v. Commissioner, supra at 645; Vandeyacht v. Commissioner, T.C. Memo. 1994-148; sec. 1.183-2(b), Income Tax Regs.

Petitioner provided very little information about the conduct of his purported business activity.  He apparently provided assistance to a few individuals to improve their credit scores and received $400 for this service in 2001.  Petitioner described his expenses and asserted that he had one or two clients for whom he had worked on real estate purchases in the past.[4]  Other than this brief description, petitioner did not provide any information on the manner in which he conducted his purported business activity.  Petitioner did not introduce any books and records to demonstrate that he conducted this activity in a businesslike manner.  Petitioner has held a real estate license since 1978, but he did not provide any information about his or any adviser's qualifications or expertise in running a

---

[4] Petitioner introduced a preprinted form contract titled "Contract to buy and sell real estate (residential)".  However, the contract is incomplete, it appears to have been filled out by petitioner, and it does not bear either his purported client's signature or his purported client's initials on the spaces provided for the client to initial each page of the agreement. This document does not show that petitioner was actively involved in any real estate transactions during the years in issue.

business.  He testified that he worked for the IRS full time and sold real estate part time.[5]  Petitioner did not hold any assets related to this activity that he expected would appreciate, and he did not introduce any evidence that he ever successfully ran a profitable business venture.  For the 3 years in issue petitioner claimed expenses totaling $48,778 while reporting a total of $400 in gross receipts.  As a result of the losses claimed, petitioners have substantially reduced the tax liabilities resulting from their wages.  There is no indication in the record whether petitioner's activity was recreational or pursued for pleasure.

Considering these factors, petitioner's vague testimony about his activities, and the personal nature of the deductions claimed on Schedules C, we conclude that Petitioner did not pursue his activity with an actual and honest objective of making a profit.  See <u>Dreicer v. Commissioner</u>, <u>supra</u>.  We sustain the disallowance of petitioners' claimed business deductions for each year in issue.  Since petitioner was not engaged in a business

---

[5] The IRS approved petitioner's request to work outside the IRS as a sales associate in 1998 and his request to work as a real estate agent in 2000.  The record also indicates that petitioner sold a piece of property in 1999 on commission for a relative and that he had no sales during any of the years in issue.

activity, we also sustain respondent's determination that the

$400 reported as income in 2001 was not taxable income.[6]

## II. Itemized Deductions

### A. Medical and Dental Expenses

Section 213(a) provides:

There shall be allowed as a deduction the expenses paid
during the taxable year, not compensated for by insurance or
otherwise, for medical care of the taxpayer, his spouse, or
a dependent (as defined in section 152), to the extent that
such expenses exceed 7.5 percent of adjusted gross income.

Section 213(d) provides in relevant part:

(1) The term "medical care" means amounts paid--

(A) for the diagnosis, cure, mitigation, treatment, or
prevention of disease, or for the purpose of affecting any
structure or function of the body,

(B) for transportation primarily for and essential to
medical care referred to in subparagraph (A),

An expenditure that is merely beneficial to the general

health of an individual is not an expenditure for medical care.

Sec. 1.213-1(e)(1)(ii), Income Tax Regs.

---

[6] Petitioner improperly reported $1,500 in returns or
allowances on his Schedule C for 2003. He explained that this
amount represented the receipt of $1,500. Petitioner testified
that he paid $1,500 to a lawyer in 2001 and that the lawyer paid
this amount back to petitioner in 2003. Petitioner did not
explain how the Social Security dispute for which he retained
this attorney related to his purported real estate activity.

Furthermore, petitioner has not identified or
substantiated any expenses that would be allowable without regard
to whether he conducted his real estate activity for profit. See
sec. 183(b)(1).

To substantiate medical and dental expenses, a taxpayer must furnish the name and address of each payee, the amount of the expense, and the date paid. If requested by the Commissioner, a taxpayer must furnish an itemized invoice from the payee that identifies the patient, the type of service rendered, the specific purpose of the expense, the amount paid, the date paid, and any other information the Commissioner deems necessary. See sec. 1.213-1(h), Income Tax Regs.; see also Davis v. Commissioner, T.C. Memo. 2006-272; Cotton v. Commissioner, T.C. Memo. 2000-333.

If a taxpayer establishes that deductible expenses were incurred but has not established the exact amounts, the Court may estimate the amounts allowable in some circumstances (the Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court can estimate the amount of a deductible expense only when the taxpayer provides evidence sufficient to establish a rational basis for making the estimate. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Where a taxpayer fails to provide adequate evidence of his expenses, the Court may uphold the Commissioner's determination denying the deduction for medical and dental expenses. See Davis v. Commissioner, supra (citing Hunter v. Commissioner, T.C. Memo. 2000-249, and Nwachukwu v. Commissioner, T.C. Memo. 2000-27).

Congress overrode the Cohan rule with section 274(d), which requires strict substantiation for certain categories of expenses; in the absence of evidence demonstrating the exact amounts of those expenses, deductions are to be disallowed entirely. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Expenses subject to section 274(d) include expenses for listed property, such as passenger automobiles. Secs. 274(d)(4), 280F(d)(4).

Before trial the parties agreed that for 2001 petitioners were entitled to deduct claimed medical expenses with the exception of prescription expenses claimed for their adult son and medical transportation expenses.[7] At trial petitioners conceded the disputed prescription expenses for their son and testified to making 84-100 trips to the pharmacy in 2001, driving 2 miles round trip each time, and to making 8 trips to their doctor, at 25 miles per trip.

The standard mileage rate for medical transportation was 12 cents per mile for 2001.[8] Rev. Proc. 2000-48, sec. 7.62,

---

[7] Claimed medical expenses are deductible only to the extent they exceed 7.5 percent of a taxpayer's adjusted gross income. Sec. 213(a). The expenses discussed herein reflect medical expenses petitioners claimed before the application of the 7.5-percent floor.

[8] The rates for 2002 and 2003 were 13 cents per mile and 12 cents per mile, respectively. Rev. Proc. 2001-54, sec. 7.02, 2001-2 C.B. 530, 532; Rev. Proc. 2002-61, sec. 7.02, 2002-2 C.B. 616, 619.

2000-2 C.B. 570, 572.  Petitioners claimed $596 in medical mileage expenses, which would represent 4,967 miles driven for medical purposes in 2001.  Petitioners testified to driving approximately 400 miles in 2001 for medical purposes but did not explain the discrepancy between the deduction claimed and the miles driven.  Furthermore, sections 274(d) and 280F(d)(4) impose strict substantiation requirements on deductions for passenger automobile expenses.  Petitioners did not introduce any evidence to support their claimed medical transportation expenses.  We may not estimate these expenses, and we sustain the disallowance of this item.  Petitioners are not entitled to claim any medical expenses for 2001 beyond the $6,190 which the parties stipulated.[9]

Petitioners claimed itemized medical expenses of $9,089 on their return for 2002 and claimed increased medical expenses of $9,136.23 before trial.  The parties stipulated that petitioners substantiated the $9,136.23 except for $3,216.55 for a bed, $163.78 for expenditures at Walgreens for their adult son, and $688.25 for medical transportation.

Petitioners did not offer testimony or other evidence related to medical transportation expenses for 2002, and we

---

[9] For 2001 petitioners' substantiated medical expenses exceed the 7.5-percent floor of sec. 213(a), and the amount in excess of that floor is allowable as a deduction.

sustain the disallowance of this item for the reasons discussed above.

Respondent agrees that petitioners paid $3,216.55 for an adjustable bed they purchased in 2002, but he argues that this expense is not deductible as an expenditure for medical care because petitioners purchased the bed for their general health. Petitioner referred to a letter from a doctor stating that petitioners' purchase of an adjustable bed was justified by his rheumatoid arthritis, and he referenced a sleep study performed on him.[10]  Mrs. Morrissey explained that the bed provided adjustments that alleviated her sleep apnea.  However, she did not assert either that she was diagnosed with sleep apnea or that they purchased the bed in 2002 on the instruction of her physician.  We conclude that petitioners have not shown that they purchased the bed in 2002 for their medical care rather than for their general health.  See sec. 1.213-1(e)(1), Income Tax Regs. We sustain the determination as to the cost of the bed.

Petitioners' son was 21 years old and attended Metro State College in 2002.  Petitioner testified that deducting expenses of items purchased at Walgreens for their son was appropriate because petitioners were supporting their son while he was in

---

[10] At trial petitioners did not introduce into evidence either the letter from the doctor or the report of the sleep study, but respondent noted that the doctor's letter was written in 2004 and that the sleep study was conducted in 2005.

school.  Section 213 allows a deduction for medical expenses of the taxpayer, his spouse, and his dependents.  Sections 151 and 152 define a dependent to include a taxpayer's child under the age of 19 or a child who is a student under the age of 24 over half of whose support was received from the taxpayer. Petitioners did not show that their son was their dependent for 2002 or any year in issue, and they did not claim their son as a dependent on any of the tax returns at issue.  We sustain the disallowance of this item.  Petitioners are not entitled to claim any medical expenses for 2002 beyond the $5,068 which the parties stipulated.[11]

For 2003 petitioners claimed they paid $6,525 in medical and dental expenses.  At trial they asserted their expenditures were $7,335.07.  Of this amount the parties dispute two items: (1) Medical transportation of $547, and (2) chiropractic services of $490.

Petitioners did not introduce testimony or other evidence supporting their medical transportation expenses in 2003. Accordingly, we sustain that determination for the reasons discussed above.

---

[11] Petitioners' substantiated medical expenses for 2002 are less than the 7.5-percent floor imposed by sec. 213(a). Accordingly, they are not entitled to any medical expense deduction for 2002.

Petitioner testified that the $490 for chiropractic services was for services provided to Mrs. Morrissey in 2003. Mrs. Morrissey did not testify about any chiropractic services. Petitioners did not introduce evidence of the name and address of the service provider, the dates of service, or the amounts paid for any visits. See sec. 1.213-1(h), Income Tax Regs. We sustain the disallowance of this item.

Petitioners are not entitled to claim any medical expenses for 2003 beyond the $5,713 which the parties stipulated.[12]

B.  Taxes

In the notice of deficiency the IRS allowed greater deductions for taxes than petitioners claimed for 2002 and 2003. For 2001 the parties dispute whether petitioners are entitled to deduct sales tax paid when they purchased a car. Petitioner testified that he thought the sales tax on that purchase was deductible along with State and local income taxes, real estate taxes, and personal property taxes.

State and local real estate property taxes, State and local personal property taxes, and State, local, and foreign income taxes are allowed as a deduction. Sec. 164(a)(1), (2), and (3). Section 164 in effect for taxable year 2001 did not permit the

---

[12] Petitioners' substantiated medical expenses for 2003 are less than the 7.5-percent floor imposed by sec. 213(a). Accordingly, they are not entitled to any medical expense deduction for 2003.

deduction of State and local general sales taxes on personal purchases;[13] rather taxes paid in connection with the acquisition of property are treated as part of the cost of the acquired property. Sec. 164(a). Thus, petitioners are not entitled to deduct the sales tax paid when they purchased a car in 2001.

C.    Interest

The parties dispute whether petitioners are entitled to deduct interest expenses of $313 in 2002 and $1,257 in 2003.

The disallowed interest in 2002 represents interest on a loan against a State Farm life insurance policy. Petitioners argue that the IRS allowed this deduction in 2001 and that it should be allowed for 2002 also.

Each taxable year stands alone, and the Commissioner may challenge in a succeeding year what was condoned or agreed to in a previous year. Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957); Rose v. Commissioner, 55 T.C. 28 (1970).

Petitioners appear to argue that respondent is estopped from disallowing the claimed interest deductions. Equitable estoppel is a judicial doctrine that precludes a party from denying his own acts or representations which induced another to act to his detriment. Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). It is well settled, however, that the Commissioner cannot be

---

[13] For taxable years beginning after Dec. 31, 2003, and before Jan. 1, 2008, taxpayers could elect to deduct sales taxes in lieu of State and local income taxes. Sec. 164(b)(5).

estopped from correcting a mistake of law, even where a taxpayer may have relied to his detriment on that mistake. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 59-60 (1995), affd. 140 F.3d 240 (4th Cir. 1998). An exception exists only in the rare case where a taxpayer can prove he or she would suffer an unconscionable injury because of that reliance. Id. at 60.

The following conditions must be satisfied before equitable estoppel will be applied against the Government: (1) A false representation or wrongful, misleading silence by the party against whom the opposing party seeks to invoke the doctrine; (2) an error in a statement of fact and not in an opinion or statement of law; (3) ignorance of the true facts; (4) reasonable reliance on the acts or statements of the one against whom estoppel is claimed; and (5) adverse effects of the acts or statement of the one against whom estoppel is claimed. Id. Petitioners have not demonstrated affirmative misconduct by respondent, nor have they established the other elements necessary for equitable estoppel to apply. Accordingly, respondent is not estopped from disallowing the claimed interest deductions.

Section 163(h) provides that no deduction shall be allowed for personal interest paid or accrued during the taxable year. Section 163(h)(2) defines personal interest as all interest allowable as a deduction other than six enumerated exceptions,

including interest on trade or business indebtedness, investment interest, and qualified residence interest, inter alia.

Petitioners have not shown that the interest they paid in 2002 to State Farm was anything other than personal interest. We conclude that any interest paid on their life insurance loan is not deductible. See sec. 163(h).

On their 2003 return petitioners claimed a $1,280 interest expense deduction for points paid during the refinancing of a home mortgage loan. Generally, a cash basis taxpayer must amortize prepaid interest over the life of the loan. Sec. 461(g)(1). There is an exception for points paid "in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer". Sec. 461(g)(2). Petitioners concede they are not entitled to deduct the entire amount in 2003. The IRS disallowed $1,257 of the $1,280 petitioners claimed. Petitioners have not demonstrated any error in the IRS's determination for 2003. Because petitioners paid points relating to a refinancing loan rather than to a loan for purchasing or improving their principal residence, we sustain the disallowance of this deduction.

D.   Gifts to Charity

In the notice of deficiency the IRS disallowed part of petitioners' charitable contribution deduction for each year in

issue, in the amounts of $567, $173, and $579 for 2001, 2002, and 2003, respectively.[14]

A taxpayer may deduct contributions or gifts made to qualifying organizations.  See sec. 170(a).  Subject to certain exceptions, when property other than money is donated "the amount of the contribution is the fair market value of the property at the time of the contribution".  Sec. 1.170A-1(c)(1), Income Tax Regs.  Taxpayers must substantiate a charitable contribution by at least one of the following:  (1) A canceled check; (2) a receipt from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution; or (3) in the absence of a canceled check or receipt from the donee charitable organization, other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.

Petitioners' only evidence relating to the charitable contributions was vague testimony about differences of opinion over the value of noncash donations.  Petitioners argued that an examiner from Arizona could not properly value petitioners' donations of cold weather clothing in Colorado.  Petitioners did

---

[14] The notice of deficiency recites that the IRS disallowed $666 of charitable contributions for 2003, but the stipulation of facts indicates that the parties dispute petitioners' entitlement to $579 in charitable contributions for 2003.  We take this discrepancy as a concession by respondent.

not introduce any evidence indicating the fair market value of items donated, identify any specific valuation errors by the IRS, nor introduce any evidence substantiating the disputed deductions.

We sustain the disallowance of the disputed charitable contribution deductions. Petitioners are entitled to charitable contribution deductions of $2,841 for 2001, $2,752 for 2002, and $2,453 for 2003, the amounts the parties agreed to in the stipulation of facts.

### E. Miscellaneous Deductions (Not Subject to 2-Percent Limitation)

Respondent disallowed the deduction petitioners claimed for a $1,500 expense identified as "Lawyers" for 2001.

Petitioner submitted a fee agreement that recites that his $1,500 retainer would be depleted at a rate of $200 per hour for an action described as "Overpayment of DIB benefits." The record indicates that petitioner sought a hearing to contest an administrative determination by the Social Security Administration (SSA). Legal expenses may be deductible if the claim with respect to which the expense was incurred originated in a trade or business or in connection with an income-producing activity. United States v. Gilmore, 372 U.S. 39 (1963). Petitioners have not introduced any evidence demonstrating that this expense is deductible under section 162 or 212 or otherwise and was not a personal expense rendered nondeductible by section

262. Furthermore, petitioners repaid $293 to the SSA in 2003 (and claimed a deduction in that amount), and the law firm returned the retainer in 2003. We are not convinced that petitioner's payment in 2001 is deductible. Thus, we sustain the disallowance of this deduction.[15]

III. Capital Loss Deduction

Petitioners reported a capital loss on the sale of General Electric (GE) stock in 2002 but underreported the basis in that stock on their Schedule D, Capital Gains and Losses. Respondent concedes that petitioners are entitled to an additional long-term capital loss of $440. The GE stock split 3-for-1 while petitioners owned the shares.

---

[15] As noted, see supra note 6, in 2003 the law firm repaid the entire amount petitioner paid his attorney in 2001, apparently without reduction for any attorney time billed to petitioner's account. Petitioner did not include the repayment in income for 2003 but rather improperly reported it as a return or allowance on his 2003 Schedule C. If we allowed a deduction for the payment in 2001, then the repayment would be income in 2003. However, because we have determined that petitioner was not engaged in the activity for profit, we have disallowed his claimed business loss for 2003. Thus, the repayment in 2003 is no longer part of his 2003 return. This $1,500 is now symmetrically treated: deduction disallowed in 2001 as a personal, family, or living expense, and repayment omitted from income in 2003 as a return of a nondeductible expenditure.

Petitioners' purchase and sale transactions follow:

<u>Purchased 38 shares @ 159.125 3/29/2000</u>

| | |
|---|---|
| Purchase price | $6,046.75 |
| Commission on purchase | 40.00 |
| Handling/service fee | 2.75 |
| SEC fee | -0- |
| Petitioners' basis | 6,089.50 |

<u>Sold 114 shares @ 30.48 8/9/2002</u>

| | |
|---|---|
| Gross sale proceeds | $3,474.72 |
| Commission on sale | (85.00) |
| Handling/service fee | (4.75) |
| SEC fee | (0.11) |
| Petitioners' amount realized | 3,384.86 |

The record reflects that petitioners' basis in the stock was $6,089.50 and that the amount realized on the sale of the stock (sales proceeds, net of commissions and fees) was $3,384.86. Section 1001 provides that the loss on the sale of property is the excess of the adjusted basis over the amount realized on the sale. Accordingly, petitioners had a net loss of $2,705 on this GE stock transaction. Petitioners reported a $2,195 loss. The difference is $510, and petitioners are entitled to an additional long-term capital loss deduction of $510.[16]

---

[16] At trial respondent accepted petitioners' computation of the long-term capital loss on this transaction. Petitioners subtracted $3,454.89 from their $6,089.50 basis in the GE stock and calculated a loss of $2,634.61, which is $439.61 greater than the loss petitioners initially reported (hence the $440 additional loss respondent conceded at trial). The $3,454.89 figure, however, appears to come from an information return that does not properly reflect the amount petitioners realized from the sale of these shares. Expenses incurred in selling property

(continued...)

IV. Accuracy-Related Penalties

The IRS determined a 20-percent penalty under section 6662(a) for each year on the underpayment of tax resulting from petitioners' disallowed real estate activity losses and their disallowed itemized deductions. Respondent asserts that the underpayment is attributable to negligence or disregard of rules or regulations. See sec. 6662(b)(1).

For the purpose of section 6662, negligence includes any failure to make a reasonable attempt to comply with tax laws, and disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Section 6664 provides a defense if a taxpayer establishes that there was reasonable cause for the underpayment and that he acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.; see also Higbee v. Commissioner, 116 T.C. 438, 448 (2001). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

---

[16](...continued)
generally reduce the gain realized. See, e.g., United States v. Gen. Bancshares Corp., 388 F.2d 184, 187 (8th Cir. 1968) ("selling expenses incurred in the sale of a capital asset are treated as capital in nature and chargeable only against the capital proceeds"). Thus, the amount of commission and fees petitioners paid on the sale is properly subtracted from the sale proceeds to arrive at the amount realized from the sale.

Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability, including reliance on the advice of a tax return preparer.

Respondent asserts that petitioners' failure to investigate fully the propriety of their deductions indicates negligence and disregard of rules and regulations.

Petitioner testified that he prepared the returns at issue. Petitioners did not rely on a paid preparer. Petitioners deducted numerous obviously personal expenses on the Schedules C for petitioner's purported real estate activity. They also claimed some itemized deductions that they could not substantiate, some that appear inflated, and some to which they are not entitled. Petitioner prepared each of the returns at issue while working for the IRS, where he had access to expertise and research materials sufficient to answer any conceivable tax question.[17] Under these circumstances, we are satisfied that

---

[17] The record indicates that petitioners were advised after the examination of their 2001 and 2002 returns not to continue claiming business expenses for petitioner's purported real estate activity. They were aware before filing their 2003 return that the IRS had proposed to disallow their 2001 and 2002 business loss deductions as well as many of their claimed itemized deductions. As noted, on their 2003 return petitioners claimed Schedule C expenses and a deduction for an alleged loss from petitioner's purported real estate activity, and they also claimed itemized deductions for 2003 similar to those claimed for 2001 and 2002.

Petitioner agreed to retire from the IRS in 2006 in exchange for the IRS's rescinding a proposed employment
(continued...)

respondent has met his burden of production under section 7491(c) to show that imposing the section 6662 accuracy-related penalties is appropriate.

Petitioners have not shown that the positions they took on their tax returns for the years in issue were taken with reasonable cause and in good faith. We are satisfied that petitioners disregarded applicable rules and regulations and acted negligently in filing their tax returns, and we sustain the determination of the accuracy-related penalty for each year in issue.

To reflect the foregoing,

Decision will be entered under Rule 155.

---

[17](...continued) termination action against him. The IRS terminated Mrs. Morrissey's employment in 2007 on the grounds that she improperly filed her 2003 Federal income tax return by improperly claiming Schedule A and Schedule C deductions.